## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GOLDEN ENTERTAINMENT PA, INC.,** | |
| **Plaintiff,** | |
| v. | **Civil Action No. 22-1731 (JDB)** |
| **SMALL BUSINESS ADMINISTRATION, et al.,** | |
| **Defendants.** | |
| **GOLDEN ENTERTAINMENT SD, INC.,** | |
| **Plaintiff,** | |
| v. | **Civil Action No. 22-1769 (JDB)** |
| **SMALL BUSINESS ADMINISTRATION, et al.,** | |
| **Defendants.** | |

## <u>MEMORANDUM OPINION</u>

In December 2020, Congress tasked the U.S. Small Business Administration ("SBA") with administering a Shuttered Venue Operators Grant ("SVOG") Program to assist entertainment venue operators that temporarily closed due to COVID-19 pandemic restrictions. Before the Court are two related cases concerning movie theater operators that requested SVOG grants from SBA, which determined that each plaintiff entity—Golden Entertainment PA, Inc. ("Golden PA" or "GPA") and Golden Entertainment SD, Inc. ("Golden SD" or "GSD")—was eligible for some amount of funding. Plaintiffs contend that the awarded amounts were arbitrarily low, and that SBA has unlawfully withheld agency action by failing to disburse the awarded funds. They seek preliminary injunctions ordering SBA to disburse the funds awarded, as well as summary judgment

1

on their claims.  SBA has cross-moved for summary judgment and opposed plaintiffs' motions for preliminary injunctions.  Because the parties are related and the legal issues in each case are identical, the Court will address the cases together.

**Background**

I.     **Statutory and Regulatory Background**

When the COVID-19 pandemic began, "[e]vent venues were the first to close," and Congress predicted that they would be among "the last [businesses] to open once it [was] gone." 166 Cong. Rec. S7901 (Dec. 21, 2020) (statement of Sen. Cornyn).  To help them "stay afloat until that long-awaited day," id., Congress passed a law authorizing grants of up to $10 million for entertainment venue operators who lost significant revenue during the lockdowns.  Consolidated Appropriations Act, Pub. L. No. 116-260, § 324, 134 Stat. 1182, 2022 (2020) (codified at 15 U.S.C. § 9009a).  Congress appropriated $16.25 billion to fund the grants, id. § 323(d)(1)(H), 134 Stat. at 2021 (appropriating $15 billion); American Rescue Plan Act of 2021, Pub. L. No. 117-2, § 5005(a), 135 Stat. 4, 91 (appropriating additional $1.25 billion), and tasked SBA with administering the program, see 15 U.S.C. § 9009a(b).

The statute provides that SBA "may" make initial and supplemental grants to an "eligible person or entity," 15 U.S.C. § 9009a(b)(2)(A), (b)(3)(A), which is defined to include, as relevant here, a "motion picture theatre operator" that (1) was "fully operational" on February 29, 2020, (2) experienced at least a 25 percent reduction in gross earned revenue on a quarterly basis in 2020 compared with 2019, and (3) "is open or intends to reopen" as of the date of the grant, id. § 9009a(a)(1)(A)(i)–(ii).

The size of initial grants was prescribed by statute as "an amount equal to the lesser of—

(i)(I) for an eligible person or entity that was in operation on January 1, 2019, the amount equal to 45 percent of the gross earned revenue of the eligible person or entity during 2019; or

(i)(II) for an eligible person or entity that began operations after January 1, 2019, the amount equal to the product obtained by multiplying— (aa) the average monthly gross earned revenue for each full month during which the eligible person or entity was in operation during 2019; by (bb) 6; or

(ii) $10,000,000.

15 U.S.C. § 9009a(c)(1)(A).  Supplemental grants could be made in an amount equal to 50 percent of the initial award.  Id. § 9009a(c)(2).

To assist entities submitting their SVOG applications, SBA issued regulatory guidance answering frequently asked questions.  As relevant here, one of the questions was how awards would be calculated if "ownership of an eligible entity was transferred."  SBA, Shuttered Venue Operators Grants, Frequently Asked Questions (Oct. 20, 2021) ("SVOG FAQ") ¶ 84.  The agency advised:

The SBA will consider the new owner of an eligible entity to have stepped into the shoes of the prior owner for purposes of qualifying for the SVOG program.  In the event of such a transfer, SBA will permit the new owner to use the prior owner's revenues as its own if the transferred entity was operational on February 29, 2020, regardless of the date of the sale.

Id.

## II.   Factual Background

These cases concern a family of movie theater operators that applied for SVOG funding.[1] The Court describes the facts relevant to each theater operator.

---

[1] Although plaintiffs do not clarify the precise relationship among the four corporations discussed herein— Golden Entertainment PA, Inc.; Golden Entertainment SD, Inc.; Golden Entertainment MN, Inc.; and Golden Ticket, Inc.—it is apparent from the briefing and overlap among the individuals involved that they are affiliated.

## A.  Golden Entertainment PA

On June 10, 2019, Golden Entertainment MN, Inc. ("Golden MN"), executed a lease on an existing movie theater building in Dubois, Pennsylvania, with a possession date of October 1, 2019.  Decl. of John Bloemeke [GPA ECF No. 36-2] ("GPA Bloemeke Decl.") ¶ 3.[2]  A movie theater operated by American Multi-Cinema ("AMC") at this same location closed on September 15, 2019.  Id.  Golden MN reopened the theater on October 4, 2019, and operated the theater through pandemic closures until April 20, 2021, when it transferred the business to a newly created, wholly owned subsidiary—Golden PA.  Id. ¶¶ 5–7.  During the three months when Golden MN operated the theater in 2019, the operator took in $311,721.71 in revenue from that theater, for an average monthly revenue of $103,907.24.  Id. ¶ 10.

On April 26, 2021, Golden PA requested an initial SVOG award of $623,443.42.  See Joint Appendix [GPA ECF No. 42-2] ("GPA J.A.") at *3, *5.  Relying on SBA guidance that a new owner could use a prior owner's revenues, Golden PA calculated its expected award as six times Golden MN's average revenues deriving from the Dubois theater for its three operational months in 2019.  See id. at *5; 15 U.S.C. § 9009a(c)(1)(A)(i)(II).  After SBA denied Golden PA's application and subsequent appeal, see GPA J.A. at *6–7, Golden PA filed an action for judicial review, Compl. [GPA ECF No. 1].  SBA then rescinded its denial and issued a notice of award for $140,285.57, twenty-three percent of the $623,443.42 requested.  Id. at *9, *70–71.  SBA did not provide an explanation for its final decision, and the agency has not disbursed the award.  Am. Compl. [GPA ECF No. 17] ("GPA Compl.") ¶¶ 30, 44.

---

[2] The declarations from John Bloemeke were appended as exhibits to SBA's briefing.  Although they were not included in the joint appendices provided by the parties, both parties rely on them, and this Court will do the same.  The Court assumes the declarations were submitted to SBA as part of the agency's reconsideration process after the present litigation began and, therefore, considered in the agency's decisionmaking.

**B. Golden Entertainment SD**

On May 19, 2019, Golden Ticket Cinemas, Inc. ("Golden Ticket") executed a lease on an existing movie theater building in Rapid City, South Dakota, with a possession date in July 2019. Decl. of John Bloemeke [GSD ECF No. 31-1] ("GSD Bloemeke Decl.") ¶ 3.[3]  A movie theater at that location previously operated by AMC closed on June 20, 2019.  Id.  Golden Ticket reopened the theater on November 1, 2019, following four months of renovations.  Id. ¶ 5.  During the two months of 2019 when Golden Ticket operated the theater, the operator earned $715,933.46 in revenue from the theater, for an average monthly revenue of $357,966.73.  Id. ¶ 12.  Golden Ticket operated the South Dakota theater through pandemic closures until April 20, 2021, when it transferred ownership of the business to a newly created, wholly owned subsidiary—Golden SD. Id. ¶¶ 7–9.

On April 26, 2021, Golden SD requested an SVOG initial award of $2,147,800.38.  See Joint Appendix [GSD ECF No. 36-2] ("GSD J.A.") at *2, *4.  Like Golden PA, Golden SD calculated its expected award as six times Golden Ticket's average revenue deriving from the Rapid City theater from the two operational months in 2019.  See id. at *2; 15 U.S.C. § 9009a(c)(1)(A)(i)(II).  After SBA denied Golden SD's application and subsequent appeal, see GSD J.A. at *17–18, Golden SD filed an action for judicial review, Compl. [GSD ECF No. 1].[4]

---

[3] Golden SD's briefing states that its prior owner is Golden MN, not Golden Ticket.  The Court assumes this was a mistake, since the administrative record, Golden SD's amended complaint, and the sworn declarations of its president all denote the prior owner as Golden Ticket.  The Court, accordingly, treats Golden Ticket as the prior owner of Golden SD.

[4] The Golden SD case was originally assigned to Judge Boasberg.  After the parties to the Golden PA case acknowledged that their case "raises essentially identical issues" to the Golden SD case,  Joint Status Rep. [GPA ECF No. 33], this Court ordered the parties to advise the Court whether they consented to the transfer of the Golden SD case to this Court for efficient resolution of the related cases, Aug. 15, 2023 Min. Order [GPA ECF].  The parties consented, and the Golden SD case was directly transferred to this Court as the later filed.  See Joint Status Rep. [GPA ECF No. 34]; LCvR 40.5(c)(2).

Shortly thereafter, SBA reversed the denial and issued a notice of award for $329,002.52, fifteen percent of the $2,147,800 requested.  Id. at *1, *16, *21–22.  SBA did not provide an explanation and has not disbursed this award.  Am. Compl. [GSD ECF No. 17] ¶¶ 32, 46.

## III.    Procedural History

In their amended complaints, filed on January 27, 2023, Golden PA and Golden SD make materially identical claims under the Administrative Procedure Act ("APA") and the Mandamus Act.[5]  First, they claim that SBA has "unlawfully withheld" the noticed funds.  See GPA Compl. ¶¶ 38–42.[6]  Second, they claim that SBA's decision to award each company an amount significantly less than requested was arbitrary, capricious, contrary to law, and unsupported by substantial evidence.  See GPA Compl. ¶¶ 43–51.  Golden PA and Golden SD ask the Court to (1) order SBA to pay the funds for which a Notice of Award has issued; (2) declare unlawful and set aside SBA's denial of the full grant award; and (3) order SBA to reconsider its decision and award each company the amount requested plus a supplemental award.  See GPA Compl. at 9.[7]

The parties have filed materially identical motions and briefing in each case.  Golden SD and Golden PA have moved for summary judgment, claiming that SBA unlawfully withheld the funds already awarded, and that the denial of the full grant award was arbitrary, capricious,

---

[5] Where the specifics of each case are not material, the Court cites only the briefing in the Golden PA case.

[6] After SBA issued Notices of Award to Golden PA and Golden SD, the agency promptly moved to dismiss each case as moot.  See Defs.' Mot. to Dismiss [GPA ECF No. 13].  Unsatisfied with the awarded amount, Golden PA and Golden SD opposed SBA's motion and were permitted to amend their complaints to challenge the new award. See Feb. 28, 2023 Min. Order [GPA ECF].

[7] On April 10, 2023, SBA filed a motion to stay each case pending the D.C. Circuit's decision in Concert Investor, LLC v. SBA, No. 22-5253 (D.C. Cir.).  See Defs.' Mot. to Stay [GPA ECF No. 28].  Before the D.C. Circuit was the question whether the cases were mooted by Congress's December 2022 recission of all remaining, unobligated SVOG funds.  Id. at 1.  SBA's motions were granted, and these cases were stayed until SBA, on July 28, 2023, withdrew its mootness arguments upon recovering about $28 million in previously appropriated funds.  See Notice Regarding Mootness [GPA ECF No. 32].

contrary to law, and unsupported by substantial evidence.  See Pl.'s Mot. for Summ. J. [GPA ECF No. 35] ("Pl.'s SJ Mot.").  SBA has opposed and cross-moved for summary judgment, arguing that Golden SD and Golden PA failed to identify a clear legal duty to support an order to disburse the funds and that the agency's decision was reasonable.  See Defs.' Mem. of P. & A. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pl.'s SJ Mot. [GPA ECF No. 36-1] ("Defs.' SJ Cross-Mot. & Opp'n").  Golden PA and Golden SD submitted combined opposition and reply briefs, see Pl.'s Reply in Supp. of Pl.'s SJ Mot. & Opp'n to Defs.' SJ Cross-Mot. [GPA ECF No. 38] ("Pl.'s SJ Reply & Opp'n"), and SBA also submitted reply briefs in each case, see Defs.' Reply in Supp. of Defs.' SJ Cross-Mot. [GPA ECF No. 41] ("Defs.' SJ Reply").

On February 29, 2024, Golden SD and Golden PA moved for preliminary injunctions ordering SBA to disburse the funds for which a Notice of Award had issued, asserting that they faced impending bankruptcy after March 2024 without relief.  See Pl.'s Mot. for Prelim. Inj. [GPA ECF No. 44] ("PI Mot.").  SBA opposed those motions, contending that Golden SD and Golden PA were unlikely to succeed on the merits, that they failed to substantiate their claims of irreparable harm, and, further, that an injunction would be contrary to the public interest in equitably distributing remaining SVOG funds to eligible grantees.  See Defs.' Opp'n to PI Mot. [GPA ECF No. 45].  All motions are now fully briefed and ripe for resolution.

## Legal Standards

### I.   Summary Judgment Standard

"[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal."  Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001). The role of the court on summary judgment is to decide, as a matter of law, "whether the agency

adhered to the standards of decisionmaking required by the APA." <u>Marshall Cnty. Health Care Auth. v. Shalala</u>, 988 F.2d 1221, 1226 (D.C. Cir. 1993).

Section 706 of the APA authorizes two forms of judicial review—both of which are implicated here. First, Section 706(1) authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). "[T]he § 706(1) provision 'provides relief for a <u>failure</u> to act.'" <u>Ctr. for Biological Diversity v. Zinke</u>, 260 F. Supp. 3d 11, 20 (D.D.C. 2017) (quoting <u>Norton v. S. Utah Wilderness All.</u>, 542 U.S. 55, 62 (2004)). "It is well established that 'a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a <u>discrete</u> agency action that it is <u>required to take</u>.'" <u>Id.</u> (quoting <u>Norton</u>, 542 U.S. at 64). The burden is on the plaintiff to "pinpoint an agency's failure to take an action that is <u>both</u> discrete <u>and</u> mandatory." <u>Id.</u> at 21.

Second, § 706(2) authorizes courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). While this review is "highly deferential" to the agency, <u>Defs. of Wildlife v. Jewell</u>, 815 F.3d 1, 9 (D.C. Cir. 2016), it is not a rubber stamp.

> [W]e must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

<u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u> ("<u>State Farm</u>"), 463 U.S. 29, 43 (1983) (internal quotation marks and citations omitted). "The party challenging an agency's action as arbitrary and capricious bears the burden of proof." <u>City of Olmsted Falls v. FAA</u>, 292 F.3d 261, 271 (D.C. Cir. 2002) (cleaned up).

## II.     Preliminary Injunction Standard

"A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" <u>Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives</u>, 920 F.3d 1, 10 (D.C. Cir. 2019) (per curiam) (quoting <u>Winter v. Natural Res. Def. Council, Inc.</u>, 555 U.S. 7, 22 (2008)). The moving party bears the burden of persuasion to establish that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tip in its favor; and (4) an injunction is in the public interest. <u>Id.</u>

## Analysis

## I.     Disbursement of Awards

Golden PA and Golden SD argue that SBA has "unlawfully withheld" agency action by failing to disburse funds after issuing the Notice of Award.  They claim that this Court should order SBA to disburse the funds under the APA and the Mandamus Act.

Golden PA and Golden SD argue that when SBA issued the Notice of Award—or at least once the companies' president signed it—SBA became required to pay it such that the Court could order disbursement.  <u>See</u> Pl.'s SJ Mot. at 9.  They point to the Notice itself, as well as certain SBA guidance documents stating that a Notice of Award means that the "[a]ward amount is finalized" and the "application is approved," and that "[a]fter the SBA receives the completed NOA, you become an Awardee/Grantee and the SBA schedules a disbursement of funds."  SBA, Shuttered Venue Operators Grant, Post-Application Guidance (July 22, 2022) at 5–6.  They further rely on a statutory provision concerning obligation of funds, as well as Government Accountability Office ("GAO") guidance on obligating grants.  PI Mot. at 7.[8]

---

[8] SBA argues that Golden PA and Golden SD have waived all but the argument that the Notice of Award establishes a duty to pay.  <u>See</u> Defs.' SJ Reply at 2.  While plaintiffs have expanded upon and clarified their arguments

Under § 706(1) of the APA, a court is authorized to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take."  Norton, 542 U.S. at 64.  Similarly, the Mandamus Act provides that a court may "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  "To show entitlement to mandamus, plaintiffs must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists."  Am. Hosp. Ass'n v. Burwell, 812 F.3d 183, 189 (D.C. Cir. 2016).  Each of these statutes "reflects the common law writ of mandamus" and carries forward its requirements.  Anglers Conservation Network v. Pritzker, 809 F.3d 664, 670 (D.C. Cir. 2016).  Under the APA or the Mandamus Act, an agency can only be ordered to perform a "ministerial or non-discretionary" duty, Norton, 542 U.S. at 64, amounting to "a specific, unequivocal command," id. at 63 (quoting Interstate Com. Comm'n v. N.Y., New Haven, & Hartford R.R. Co., 287 U.S. 178, 204 (1932)).

Golden PA and Golden SD have not pointed the Court to any statutory or binding regulatory provision requiring SBA to disburse funds once a Notice of Award has issued.  Indeed, the statute appears to give SBA discretion whether to make any awards at all.  See 15 U.S.C. § 9009a(b)(2)(A) ("The Administrator may make initial grants to eligible persons or entities." (emphasis added)).

---

after filing their opening summary judgment brief, they do not fundamentally raise any new arguments.  Further, defendants have had a full and fair opportunity to respond, and therefore will not be prejudiced by the Court's consideration of additional citations and authority relied upon in their combined summary judgment opposition and reply briefs and in their preliminary injunction briefing.

Plaintiffs have also failed to demonstrate that the Notice of Award creates a "ministerial or non-discretionary" duty.  Golden PA and Golden SD have not provided any cases supporting their claim that a Notice of Award, or a similar document, can create a mandatory duty.  Indeed, the face of the document states that "[this] form is used to notify grant recipients of award reporting and record keeping requirements."  GPA J.A. at *70; GSD J.A. at *21.  It does not state or otherwise indicate that the award commits the agency to disbursing the funds.

SBA directs the Court to two decisions of the Court of Federal Claims that bear on this question.  Those cases considered whether the Notice of Award evinced the agency's intent to enter a binding contract with an SVOG applicant.  See Harlem Globetrotters Int'l, Inc. v. United States, 168 Fed. Cl. 31 (2023); Imaginarium, LLC v. United States, 166 Fed. Cl. 234 (2023).  Those courts concluded that the notice did "not purport to undertake any reciprocal commitments by the SBA.  The document's purpose is reflected in its title; it is simply a notice, nothing more."  Harlem Globetrotters, 168 Fed. Cl. at 40.  While those cases specifically concerned the agency's intent to contract—which is not at issue here—their reasoning is persuasive.  The Notice indicates the amount that SBA would issue to Golden PA and Golden SD, but it does not conclusively establish a non-discretionary duty to issue the award, nor a timeframe for the issuance of the award.  Cf. Norton, 542 U.S. at 71 (concluding that agency's statement of its future plans did not create binding obligation that could be compelled under § 706(1)).

The agency guidance documents cited by Golden PA and Golden SD do not turn the Notice of Award into a command.  While an agency "can create a non-discretionary duty by binding itself through a regulation carrying the force of law," a "non-binding document cannot impose on an agency an enforceable duty to act."  Elec. Priv. Info. Ctr. v. IRS, 910 F.3d 1232, 1244–45 (D.C. Cir. 2018); see Babamuradova v. Blinken, 633 F. Supp. 3d 1, 16 (D.D.C. 2022) (concluding that

State Department "guidelines do not carry the force of law," and, therefore, do "not require the State Department to take any action at all").  Golden PA and Golden SD do not attempt to argue that the guidance documents on which they rely are binding agency regulations with the "force of law."   See generally Cmty. Nutrition Inst. v. Young, 818 F.2d 943, 946 (D.C. Cir. 1987) (per curiam) (elaborating on the distinction between rules and guidance).  Nor does the quoted language from those documents indicate an agency commitment to take any action, as opposed to a notification of action the agency is likely to take.

Plaintiffs' citations to federal accounting law fare no better.  The statute cited, 31 U.S.C. § 1501(a)(5), does not create any requirement that SBA "obligate" funds after issuing a Notice of Award.  Rather, it sets forth prerequisites before SBA can obligate any funds.  And for the reasons already given, plaintiffs' citations to GAO guidance on obligating grant funds cannot create a legal obligation for SBA to disburse the money.

Because Golden PA and Golden SD have failed to point the Court to any legal requirement for SBA to disburse the awarded funds following issuance of the Notice of Award, the Court will grant SBA's cross-motions for summary judgment and deny Golden PA and Golden SD's motions for summary judgment on the § 706(1) claims.  Further, because the § 706(1) claims are the only legal basis on which Golden PA and Golden SD seek preliminary relief, the Court will also deny the motions for preliminary injunctions without reaching the other injunction factors.

## II.   Calculation of Awards

Golden PA and Golden SD contend SBA's calculation of their awards was arbitrary, capricious, contrary to law and unsupported by substantial evidence.  5 U.S.C. § 706(2)(A).

### A.  Failure to Provide a Reasoned Explanation

Before reaching the merits, the Court must address a preliminary issue: the record provided by the parties in each case does not provide <u>any</u> explanation why SBA ultimately decided to award Golden PA and Golden SD less money than they requested—the agency action at issue here. Because "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based," <u>SEC v. Chenery Corp.</u>, 318 U.S. 80, 87 (1943), the usual remedy under such circumstances is a "remand to the agency for additional investigation or explanation," <u>Fla. Power & Light Co. v. Lorion</u>, 470 U.S. 729, 744 (1985).

In their opening briefs, Golden PA and Golden SD argue that the agency's failure to supply a "meaningful basis upon which to evaluate [its] decisionmaking" is arbitrary and capricious.  Pl.'s SJ Mot. at 9 (quoting <u>Amerijet Int'l, Inc. v. Pistole</u>, 753 F.3d 1343, 1346 (D.C. Cir. 2014) (alteration in original); <u>see id.</u> at 9–11.  Rather than responding to this argument, SBA supplied an explanation within its cross-motion for summary judgment, <u>see</u> Defs.' SJ Cross-Mot. & Opp'n at 8–11, and asked the Court to review that explanation in lieu of a decision below, <u>see</u> Defs.' SJ Reply at 15 n.7.  SBA's failure to provide any administrative explanation might very well be grounds to set aside the awards.  Nevertheless, the Court will proceed to consider the agency's proffered rationale, because even that rationale is arbitrary and capricious.  And since the agency has represented that the briefing rationale was its actual rationale, <u>id.</u>, it would be futile to remand the decision to the agency for the very same unpersuasive explanation.

### B.  APA Review of Agency Decision

The central dispute between the parties is whether the awards should have been calculated as if Golden PA and Golden SD were "in operation" on January 1, 2019, or instead as if they did not begin operating until the fall of 2019.  Recall that an entity is eligible for SVOG funding if,

among other requirements, it was "fully operational" on February 29, 2020.  15 U.S.C. § 9009a(a)(1)(A)(i)–(ii).  Then, the award is calculated as follows: if an eligible entity was already "in operation" on January 1, 2019, the initial award is calculated as 45% of the gross earned revenue during 2019.  Id. § 9009a(c)(1)(A)(i)(I).  But if an eligible entity "began operations" after January 1, 2019, the initial award is calculated as six times the average monthly gross earned revenue during the period that the entity was in operation.  Id. § 9009a(c)(1)(A)(i)(II).  Hence, if an eligible entity were "in operation" on January 1, 2019, and earned $1 million in revenue during 2019, it would be eligible for an initial award of $450,000.  However, if an eligible entity began operations on October 1, 2019, and earned $100,000 per month through the end of the year, it would be eligible for an initial award of $600,000.

The parties have not advanced arguments as to the proper interpretation of the statute and, specifically, whether and when Golden PA, Golden SD or their predecessors were: (1) "eligible person[s] or entit[ies]" (2) "fully operational" for purposes of the definitional provision, or (3) "in operation" for purposes of the award provision.  See 15 U.S.C. § 9009a(a)(1)(A), (c)(1)(A).  Nor have the parties addressed the effect, if any, of the "multiple business entities" provision on this case.  See id. § 9009a(a)(1)(D).[9]  The only arguments before the Court concern SBA's determination that Golden PA and Golden SD were "in operation" on January 1, 2019.  The Court, accordingly, confines its analysis to this issue.  Because the arguments are the same with respect to each theater operator, the Court focuses here on Golden PA.

SBA's position is that Golden PA was "in operation" on January 1, 2019, because AMC operated a movie theater in the same premises on that date.  "Just as Golden PA, which was not

---

[9] This provision provides that "[e]ach business entity of an eligible person or entity that also meets the requirements under subparagraph (A) and that is not described in subparagraph (B) shall be treated by the Administrator as an independent, non-affiliated entity for the purposes of this section."  15 U.S.C. § 9009a(a)(1)(D).

incorporated until April 20, 2021, stands in Golden MN's shoes, so too does Golden MN stand in the shoes of AMC Theaters, which operated the theater as of January 1, 2019." Defs.' SJ Cross-Mot. & Opp'n at 9. With respect to Golden MN and Golden PA, "the new operator took over the theater's operation, acquired the old operator's fixtures and other business assets, and retained the theater's key staff and many familiar aspects of its character." Id. at 10. Therefore, SBA argues, Golden PA was "in operation" on January 1, 2019, and is only eligible for an initial award equal to 45% of revenue it can demonstrate from 2019. Id. at 9. And because Golden PA only produced documentation of revenue from October, November, and December 2019, SBA properly awarded Golden PA a grant equal to 45% of that revenue. Id.

Golden PA responds that SBA's position is irrational because it is premised on a "flawed" analogy among the three entities. Pl.'s SJ Reply & Opp'n at 4. The company contends that there is a fundamental difference between the relationship of Golden PA to Golden MN and of Golden MN to AMC: whereas Golden PA is a wholly owned subsidiary of Golden MN, Golden MN is "unrelated to, and in fact a competitor of, AMC." Id. Although Golden MN "took possession of a space" previously occupied by AMC, it "did not purchase any part of AMC's company such that it would become a successor owner of AMC's Dubois, Pennsylvania location." Id. This distinction, Golden PA asserts, is underscored by the fact that it does not have access to AMC's revenue information from 2019. Id. at 5. Therefore, Golden MN (and its spin-off Golden PA) "began operations" after January 1, 2019, and SBA should have calculated its award as six times its average monthly revenue from October through December 2019. Id.

Taking the arguments on their own terms, the Court agrees with Golden PA that SBA's position is not rational and hence arbitrary and capricious. While the "scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that

of the agency," a court cannot uphold an agency action when the agency has "entirely failed to consider an important aspect of the problem." <u>State Farm</u>, 463 U.S. at 43.  In reaching the conclusion that Golden PA and Golden SD were in operation on Jan 1, 2019, SBA "entirely failed to consider" the differences between the three movie theater operators.  It was "a clear error of judgment," <u>id.</u>, to conclude that the relationship between Golden PA and Golden MN is materially the same as the relationship between Golden MN and AMC Theaters (and likewise with respect to the South Dakota theater operators).

None of SBA's counterarguments is persuasive.  First, SBA asserts that it was reasonable to "treat[] the theater itself, not the corporation that owned it, as the relevant 'eligible entity.'" Defs.' SJ Reply at 11. That position is not reasonable both because logically the grants at issue were sought by and made to the businesses rather than the physical event venue, and because it appears to conflict with a plain reading of the statute, which defines "eligible entity," in relevant part, as a "motion picture theatre <u>operator</u>," not as a motion picture <u>theater</u>.  15 U.S.C. § 9009a(a)(1)(A) (emphasis added).  Second, SBA claims that treating the theater as the eligible entity "advanced the Program's purpose" of "provid[ing] relief to local cultural landmarks so that they could survive the pandemic."  Defs.' SJ Reply at 12.  That argument only follows if the Court were to hold that subsequently purchased entities would be ineligible for grants—which the Court has not done on the arguments presented.  Third, SBA contends that it was reasonable to treat Golden MN as "stepp[ing] into the shoes" of AMC Theaters, SVOG FAQ ¶ 84, because of the "continuity of the theater's identity in the DuBois community."  Defs.' SJ Reply at 13 (citing local news coverage of the theater reopening).  However, that conclusion is at odds with the facts embraced in a sworn declaration from Golden PA's president (submitted by SBA as evidence in this case), which describes the relationship of Golden MN and AMC Theaters as consecutive

leaseholders of a movie theater owned by a third party.  GPA Bloemeke Decl. ¶ 3.  Finally, it is not rational here to conclude that Golden PA and Golden SD have ready access to a prior independent business entity's financial information.[10]  In sum, because SBA's reasoning is flawed, the agency's conclusions that Golden PA and Golden SD were in operation on January 1, 2019, and that their awards should be calculated on that basis are arbitrary and capricious.

### C. Remedy

Having concluded that SBA's actions were arbitrary and capricious, the only remaining question is the appropriate remedy.  Golden PA and Golden SD argue that they are entitled to a certain award amount as a matter of law and seek an injunction ordering relief.  They further seek an order "declar[ing] invalid and set[ting] aside the SBA's denial of the [companies'] request for . . . SVOG award funds" in the amounts originally sought.  Pl.'s SJ Mot. at 13; see GPA Compl. at 9.  SBA contends, on the other hand, that if the Court concludes that the agency erred, remand and vacatur is warranted.  See Defs.' SJ Cross-Mot. & Opp'n at 12–14.

"[U]nder settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards."  N.C. Fisheries Ass'n, Inc. v. Gutierrez, 550 F.3d 16, 21 (D.C. Cir. 2008) (quoting PPG Indus. v. United States, 52 F.3d 363, 365 (D.C. Cir. 1995).  Only in the rare case will a court conclude that "remand

---

[10] In footnotes, SBA insinuates that Golden PA and Golden SD might be inappropriately withholding revenue information for 2019.  See Defs.' SJ Cross-Mot. & Opp'n at 9 n.4 ("During the grant-making process, SBA repeatedly asked Golden for revenue information for the earlier months in 2019.  Golden claimed to lack this information, and purported to be unable to obtain the information from AMC Theaters—even though Golden MN, Golden NE, and Golden Ticket all had obtained and provided revenue information from their theaters' prior operators.").  SBA has provided no evidence to contradict the sworn declarations from Golden PA's and Golden SD's president stating that "[n]either Golden MN nor Plaintiff Golden Entertainment [PA] have revenue information from the prior leaseholder/operator – AMC," GPA Bloemeke Decl. ¶ 11, and that "[n]either Golden Ticket nor Plaintiff Golden Entertainment [SD] have revenue information from the prior leaseholder/operator – AMC," GSD Bloemeke Decl. ¶ 10.

would be futile . . . as only one disposition is possible as a matter of law." <u>George Hyman Constr.</u> <u>Co. v. Brooks</u>, 963 F.2d 1532, 1539 (D.C. Cir. 1992).

Contrary to Golden PA's and Golden SD's assertions, this is not the rare case where the Court can direct an award as a matter of law. Golden PA and Golden SD were not technically the businesses in operation on February 29, 2020. Their eligibility for an award is premised on SBA extending grants to the new owners of pre-existing entities—here, Golden MN and Golden Ticket. <u>See</u> <u>id.</u> § 9009a(c)(1)(A); SVOG FAQ ¶ 84. It is a question for the agency, not for the Court, to decide in the first instance how these companies should be treated.[11] Accordingly, the appropriate remedy is remand and vacatur of the agency's actions. The Court acknowledges that Golden PA and Golden SD have not sought vacatur of the Notice of Award, but vacatur of the agency's denial of the full award amount requested. <u>See</u> GPA Compl. at 9. However, the two cannot be separated: because SBA's same faulty reasoning affects the Notices of Award that were issued and the agency's denial of a larger award amount, the Court must vacate both. Plaintiffs cannot have it both ways.

## <u>Conclusion</u>

For the reasons stated here, the Court will grant Golden PA's and Golden SD's motions for summary judgment on their claims that SBA's actions were arbitrary and capricious under § 706(2)(A), and deny their motions to compel disbursement of funds under § 706(1) and the

---

[11] SBA represents that it previously denied Golden PA's and Golden SD's applications because it had "already counted their 2019 revenues in calculating grants for three affiliated corporate entities—Golden MN, Golden Entertainment NE, Inc. [], and Golden Ticket." Defs.' SJ Cross-Mot. & Opp'n at 3 n.1. "During a reconsideration process, SBA recalculated those three entities' grant awards in a manner that excluded Golden PA and Golden SD's 2019 revenues . . . [and] for the first time it could award Golden PA and Golden SD grants based on their 2019 revenues." <u>Id.</u> The Court does not express any opinion on this rationale—which was not before the Court—nor does it adopt SBA's argument that any error in this case was "harmless" because under a "corporate formalities-centric approach" Golden PA and Golden SD are not entitled to any award at all. <u>See</u> Defs.' SJ Reply at 15–16. The Court only emphasizes that it has not dictated the approach SBA must take on remand.

Mandamus Act.  The Court will accordingly deny SBA's cross-motions for summary judgment on the arbitrary and capricious claims, and grant SBA's motions as to the agency's failure to disburse the funds.  The Court will vacate the SBA's SVOG award determinations for Golden PA and Golden SD, including the Notices of Award and SBA's denial of the companies' requests for a larger award,  and remand for a redetermination and explanation consistent with this Memorandum Opinion.  The Court will further deny Golden PA's and Golden SD's motions for preliminary injunctions.  Orders consistent with this Memorandum Opinion will issue.

/s/
_____
JOHN D. BATES
United States District Judge

Dated: <u>March 29, 2024</u>